**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| MONIQUE KELLY, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED PARCEL SERVICE, INC.<br><br>Defendant. | **CIVIL ACTION NO:**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Monique Kelly ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits this Class Action Complaint against Defendant United Parcel Service, Inc. ("UPS" or "Defendant"). Plaintiff makes the following allegations upon personal knowledge as to her own actions, experiences, transactions, and injuries, and, as to all other matters, upon information and belief based on the investigation of counsel, review of UPS records and communications, review of public statements and materials issued by UPS, review of public court filings and governmental materials, and other information reasonably available to Plaintiff and her counsel.

## INTRODUCTION

1. This is a consumer restitution and unfair trade practices class action arising from UPS's collection and retention of tariff-related import charges and associated fees from ordinary consumers who paid UPS to obtain delivery of personal-use international shipments.

1

2. Plaintiff Monique Kelly is a South Carolina consumer who received an international package delivered by UPS. Before UPS delivered the package, UPS required payment of import fees. Plaintiff paid the import fees demanded by UPS, and UPS delivered the package to Plaintiff in Columbia, South Carolina.

3. The import fees UPS collected from Plaintiff and similarly situated consumers were tied to tariffs imposed under the International Emergency Economic Powers Act ("IEEPA"), as well as related administrative, brokerage, processing, disbursement, late, or similar fees charged in connection with UPS's rating, assessment, advancement, collection, or administration of those tariffs.

4. On February 20, 2026, the Supreme Court of the United States held that IEEPA did not authorize the President to impose the challenged tariffs. As a result, the legal foundation for the tariff-related charges collected from consumers no longer exists.

5. UPS has publicly acknowledged that certain IEEPA tariff payments are eligible for refund and that, where UPS served as the importer of record, UPS will seek refunds from U.S. Customs and Border Protection ("CBP") and issue tariff refunds to the payors after UPS receives the funds.

6. But UPS has also taken the position that administrative fees charged in connection with rating and assessing IEEPA tariffs are nonrefundable. In other words, UPS intends to retain fees it charged consumers to process, rate, assess, advance, collect, or administer tariffs that were not authorized by law.

7. UPS cannot have it both ways. If the tariff charges must be returned because the tariffs were unauthorized, then UPS cannot equitably retain separate fees charged only because those

same unauthorized tariffs were rated, assessed, advanced, processed, collected, or administered.

8.    This case does not seek to regulate UPS's rates, routes, services, or prospective shipping practices. Plaintiff does not ask this Court to set shipping prices, alter delivery services, or dictate how UPS transports packages. Plaintiff seeks restitution, damages, declaratory relief, and an accounting for money UPS collected from consumers and has no lawful or equitable right to retain after the IEEPA tariffs were held unauthorized.

9.    Plaintiff brings this action because UPS collected tariff-related charges and associated fees from consumers, has announced a process to recover and return certain tariff amounts, but has refused to provide full refunds of all associated tariff-related fees. That partial-refund policy allows UPS to keep money generated by invalid tariff assessments while consumers bear the loss.

10.    Plaintiff also brings this action as a recipient, consignee, and payor of an import-fee demand. Plaintiff did not select UPS as the shipper, tender the package to UPS, negotiate shipping services, or knowingly assent to any UPS arbitration clause or class action waiver by paying import fees to obtain delivery of property already in UPS's possession.

11.    Payment of an import-fee demand under those circumstances was not assent to a broad arbitration agreement, class action waiver, limitation-of-liability provision, or UPS Tariff/Terms. It was a payment made to secure delivery of a package UPS was already carrying and would not deliver without payment.

12.    Plaintiff brings this action individually and on behalf of all similarly situated consumers to recover tariff-related charges and associated fees collected and retained by UPS, to require

UPS to account for refunds received or sought from CBP, and to prevent UPS from retaining fees charged for administering unauthorized IEEPA tariffs.

## JURISDICTION AND VENUE

13.    Plaintiff incorporates all previous paragraphs as asserted herein

14.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: (a) the proposed Class contains more than 100 members; (b) at least one member of the proposed Class is a citizen of a state different from Defendant; and (c) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

15.    Plaintiff Monique Kelly is a citizen and resident of South Carolina.  Columbia is located in Richland County.

16.    Defendant United Parcel Service, Inc. is a corporation with its principal place of business in Atlanta, Georgia. Defendant is not a citizen of South Carolina.

17.    This Court also has jurisdiction to enter declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between Plaintiff and Defendant concerning Defendant's obligation to refund, return, account for, or disgorge tariff-related import charges and associated administrative, brokerage, processing, disbursement, late, or similar fees collected from Plaintiff and members of the proposed Class.

18.    This Court has personal jurisdiction over Defendant because UPS maintains its principal place of business in this District, conducts substantial business in this District, directs corporate policy from this District, and made, implemented, or administered the challenged tariff-refund and fee-retention policies from or through this District.

4

19.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District for venue purposes. UPS maintains its principal place of business in Atlanta, Georgia, within the Northern District of Georgia.

20.    Venue is also proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. UPS's challenged decisions, policies, refund practices, accounting practices, customer communications, tariff-refund administration, and fee-retention practices were made, directed, implemented, or managed from UPS's principal place of business in this District.

21.    Venue is further proper because Plaintiff's claims arise from uniform UPS policies and practices concerning the collection, retention, refund, and non-refund of tariff-related charges and associated fees, and those policies and practices emanate from UPS's corporate headquarters in this District.

**PARTIES**

22.    Plaintiff incorporates all previous paragraphs as asserted herein.

23.    Plaintiff Monique Kelly is a citizen and resident of South Carolina. She resides in Columbia South Carolina which is located in Richland County.

24.    Plaintiff is a consumer who received a personal-use item via international shipment transported and delivered by UPS. More specifically, she purchased various items and fixtures for her bathroom off an E-bay store located in the United Kingdom. When she made the E-bay purchase she assumed that she had paid the full price along with all necessary shipping fees. Upon information and belief, once they package began to ship, she was contacted by UPS to pay associated tariffs and processing fees which she did do even though this was an unanticipated additional expense.

25.     Ultimately, UPS delivered Plaintiff's shipment to her address in Columbia, South Carolina.

26.     Plaintiff's payment of the  UPS import fees was a requirement to obtain delivery of her package.

27.     UPS's own tracking records confirm that import fees were paid for Plaintiff's shipment.

28.     To date, Plaintiff has not received a full refund of all tariff-related charges and associated administrative, brokerage, processing, disbursement, late, or similar fees collected by UPS.

29.     Plaintiff brings this action individually and on behalf of all similarly situated consumers who paid UPS tariff-related import charges and associated fees and who have not received a full refund of all such amounts.

30.     Defendant United Parcel Service, Inc. is a corporation with its principal place of business located at 55 Glenlake Parkway, N.E., Atlanta, Georgia 30328.  Atlanta is located within Fulton County.

31.     UPS may be served through its registered agent, CSC of Cobb County, Inc., 192 Anderson Street SE, Suite 125, Marietta, Georgia 30060.

32.     UPS is a global package delivery, logistics, transportation, customs brokerage, and import-clearance company.

33.     UPS transports and delivers international shipments to consumers throughout the United States, including Plaintiff and members of the proposed Class.

34.     UPS collects import fees, tariff-related charges, administrative fees, brokerage fees, disbursement fees, processing fees, late fees, and other similar charges from consumers in connection with international shipments.

35.     In connection with many consumer international shipments, UPS acts as carrier, customs broker, collection intermediary, filer of entry, and/or importer of record.

36. Upon information and belief, for Plaintiff's shipment and for many shipments received by members of the proposed Class, UPS collected tariff-related charges and associated fees from the consumer payor and either advanced, remitted, retained, processed, administered, or sought reimbursement for those amounts.

37. UPS maintains records identifying the shipment, tracking number, delivery address, payor, amount charged, type of import fee charged, tariff-related amounts, administrative or processing fees charged, refund eligibility, refund status, and amounts retained.

38. UPS also maintains and controls the policies, procedures, records, and refund processes governing whether consumers who paid IEEPA tariff-related charges and associated fees receive full refunds.

39. UPS's challenged conduct, including its policy of refusing to refund certain administrative or processing fees associated with IEEPA tariffs, was made, directed, implemented, administered, or ratified by UPS from its corporate headquarters in Atlanta, Georgia.

## FACTUAL ALLEGATIONS

**40.** Plaintiff incorporates all previous paragraphs as asserted herein.

### A. The IEEPA Tariffs

41. In 2025 and 2026, the federal government-imposed tariffs on certain goods imported into the United States under the International Emergency Economic Powers Act ("IEEPA").

42. These IEEPA tariffs were assessed on imported goods and were passed through the import and delivery chain to consumers, including ordinary consumers receiving personal-use international shipments.

43. UPS transported and delivered international shipments while the IEEPA tariffs were in effect.

44. In connection with those shipments, UPS collected import fees from consumers, including tariff-related amounts and associated fees charged in connection with rating, assessing, processing, advancing, collecting, administering, or delivering shipments subject to IEEPA tariffs.

45. On February 20, 2026, the Supreme Court of the United States held that IEEPA did not authorize the President to impose the challenged tariffs.

46. The Supreme Court's ruling invalidated the legal basis for the IEEPA tariff charges that had been imposed on imported goods and passed through to consumers.

47. After the Supreme Court's ruling, tariff payments collected under the invalidated IEEPA tariffs became subject to refund through processes administered by U.S. Customs and Border Protection ("CBP") and importers of record.

**B. UPS's Role in Collecting Tariff-Related Charges**

48. UPS is a global package delivery, logistics, customs brokerage, and import-clearance company that transports and delivers international shipments to consumers throughout the United States.

49. For many consumer international shipments, UPS serves not only as the carrier, but also as customs broker, filer of entry, collection intermediary, and/or importer of record.

50. UPS collects import fees from consumers before or in connection with delivery of international shipments.

51. UPS's import-fee demands may include tariff charges, government charges, administrative fees, brokerage fees, disbursement fees, processing fees, late fees, and other similar charges.

52. UPS collects these amounts directly from consumers who are often recipients or consignees of shipments, rather than the shippers who selected UPS, tendered packages to UPS, or arranged the transportation service.

53. Consumers receiving these demands are placed in a practical bind: pay the demanded import fees or risk delayed delivery, additional charges, or non-delivery of their packages.

54. UPS maintains electronic records identifying the shipment, tracking number, recipient, delivery location, import-fee demand, amount paid, payment status, fee category, refund eligibility, refund status, and amounts retained.

55. UPS's own records can identify consumers who paid IEEPA tariff-related charges and associated fees.

56. UPS's own records can also identify whether UPS served as importer of record for particular shipments and whether UPS requested, received, processed, issued, or retained tariff refunds associated with those shipments.

**C. UPS's Public Refund Position**

57. After the Supreme Court's IEEPA ruling, UPS published information concerning IEEPA tariff refunds.

58. UPS publicly acknowledged that CBP is accepting refund requests for tariffs invalidated by the Supreme Court.

59. UPS further stated that, for shipments where UPS was the importer of record, UPS would request and retrieve IEEPA tariff refunds from CBP on its customers' behalf.

60. UPS stated that, after receiving refund funds from CBP, it established a process to issue refunds to the payors.

61.    UPS also stated that customers whose shipments fall within that process do not need to contact UPS to obtain tariff refunds.

62.    UPS's public statements confirm that UPS recognizes the payors—not UPS—as the proper recipients of tariff refunds for shipments where UPS collected tariff-related charges and later receives refund funds from CBP.

63.    UPS's public statements also confirm that UPS has access to and control over the records necessary to identify eligible shipments, payors, tariff charges, refund status, and refund amounts.

64.    But UPS has also taken the position that certain administrative fees associated with IEEPA tariffs are nonrefundable.

65.    UPS's position means that even where UPS returns or intends to return tariff amounts to consumers, UPS intends to retain separate fees charged in connection with rating, assessing, processing, advancing, collecting, administering, or otherwise handling those same IEEPA tariffs.

66.    UPS's refusal to refund those associated fees is unfair and inequitable because the fees were generated by and tied to tariffs that lacked statutory authorization.

67.    UPS should not be permitted to profit from or retain fees charged only because UPS rated, assessed, processed, advanced, collected, or administered unauthorized tariff charges.

**D.  Plaintiff Kelly's Shipment and Payment**

67.    Plaintiff Monique Kelly is a South Carolina consumer who received an international shipment transported and delivered by UPS.

10

68.    Plaintiff Kelly purchased items for her bathroom for an E-bay Store located in the United Kingdom.  To perfect the purchase she was required to pay for the price of the item along with the appropriate Shipping and handling costs which she did do.

69.    Upon information and belief, Plaintiff Kelly was contacted by UPS to pay tariff related import charges and associated brokerage and processing fees etc.  Payment of these monies came as a surprise to her as she thought that all shipping costs were paid at the time of purchase.  Nevertheless, she paid what was asked by UPS in order to obtain her items.

70.    Plaintiff Kelly did not engage with UPS directly prior to being invoiced for the tarrifs and, upon information and belief, did not consent to any arbitration agreements that UPS may have in place should they claim such is covered by this action.

71.    The UPS communication identified the total amount due as $65.88. UPS directed Plaintiff to pay the demanded import fees to obtain delivery of her shipment. Plaintiff paid the import fees demanded by UPS.

72. UPS assigned tracking number 1Z61V11Y0434119996 to Plaintiff's shipment. UPS's tracking records show that the shipment had an import scan in Philadelphia, Pennsylvania, was released by a government agency, traveled through UPS facilities, and was ultimately delivered to Plaintiff in Columbia, South Carolina.

73. Plaintiff has not received a full refund of all tariff-related charges and associated administrative, brokerage, processing, disbursement, late, or similar fees collected by UPS.

74.    Plaintiff suffered economic injury because UPS collected and retained money from her that UPS had no lawful or equitable right to retain after the IEEPA tariffs were held unauthorized.

75.     Plaintiff also suffered loss of use of money and remains subject to UPS's uniform policy of refusing to refund associated administrative or processing fees charged in connection with IEEPA tariffs.

## E.  **Plaintiff Did Not Agree to Arbitrate**

76.     Plaintiff was the recipient, consignee, and payor of an import-fee demand.

77.     Plaintiff did not negotiate shipping services with UPS.

78.     Plaintiff did not create the shipment through a UPS shipper account.

79.     Plaintiff did not knowingly agree to UPS's Tariff/Terms, an arbitration clause, or a class action waiver in connection with the shipment.

80.     UPS already had possession, custody, or control of Plaintiff's package when UPS demanded payment of import fees.

81.     Plaintiff paid the import-fee demand to obtain delivery of property already being transported by UPS.

82.     Payment of an import-fee demand under those circumstances was not assent to a broad arbitration agreement, class action waiver, limitation-of-liability provision, or UPS Tariff/Terms.

83.     Plaintiff's claims do not seek to enforce UPS's Tariff/Terms or any shipping contract.

84.     Plaintiff's claims arise from UPS's collection and retention of money after the IEEPA tariffs were held unauthorized, including UPS's refusal to fully refund associated tariff-related administrative, processing, brokerage, disbursement, late, or similar fees.

85.     Any UPS attempt to impose arbitration based on terms directed to shippers, hidden in tariff documents, or presented after UPS already had possession of the package would

12

be ineffective against Plaintiff and similarly situated recipients, consignees, and payors who did not knowingly assent to those terms.

**F.  UPS's Uniform Conduct**

86.      UPS's challenged conduct was not unique to Plaintiff.

87.      UPS collected IEEPA tariff-related charges and associated fees from consumers throughout the United States.

88.      UPS used uniform systems and records to calculate, assess, demand, collect, process, and track those import-fee payments.

89.      UPS's public refund policy applies uniformly to consumers whose shipments are eligible for IEEPA tariff refunds where UPS served as importer of record.

90.      UPS's refusal to refund administrative fees charged in connection with IEEPA tariffs is likewise a uniform policy.

91.      The central facts necessary to determine liability and relief are common to Plaintiff and the proposed Class, including whether UPS collected IEEPA tariff-related charges, whether UPS served as importer of record, whether UPS obtained or will obtain refunds from CBP, whether UPS issued refunds to payors, and whether UPS retained associated administrative, processing, brokerage, disbursement, late, or similar fees.

92. The amount owed to Plaintiff and Class Members can be determined from UPS's own records, including shipment records, payment records, importer-of-record records, fee-category records, refund records, and retention records.


**CLASS ACTION ALLEGATIONS**

93. Plaintiff incorporates the previous paragraphs as if fully set forth herein.


13

94.  Plaintiff brings this action individually and on behalf of all others similarly situated under Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and, where appropriate, 23(c)(4).

95.  Plaintiff seeks certification of the following Nationwide Class:

> All persons in the United States who, as recipients, consignees, or payors of personal-use international shipments transported or delivered by UPS, paid UPS IEEPA tariff charges, import fees, administrative fees, brokerage fees, disbursement fees, processing fees, late fees, or similar tariff-related charges, and who have not received a full refund of all such amounts.

96. In the alternative, or in addition, Plaintiff seeks certification of the following Recipient/Payor Class:

> All persons in the United States who, as recipients, consignees, or payors of personal-use international shipments transported or delivered by UPS, paid UPS IEEPA tariff charges, import fees, administrative fees, brokerage fees, disbursement fees, processing fees, late fees, or similar tariff-related charges, where the person did not create the shipment, did not tender the package to UPS, and did not use a UPS shipper account for the shipment.

97. Excluded from the Class are: Defendant; Defendant's parents, subsidiaries, affiliates, officers, directors, agents, and employees; any entity in which Defendant has a controlling interest; Defendant's legal representatives; the judge assigned to this case and any member of the judge's immediate family; and all persons who timely and validly request exclusion from the Class.

98.  Plaintiff reserves the right to amend, modify, narrow, expand, or otherwise refine the Class and Subclass definitions based on discovery, UPS's records, UPS's tariff-refund process, UPS's importer-of-record data, UPS's payment records, UPS's fee-category records, and any other information obtained in this litigation.

**Numerosity**

99. The members of the Class and Subclass are so numerous that joinder of all members is impracticable.

100.    UPS collected IEEPA tariff-related import charges and associated fees from consumers throughout the United States, including consumers in South Carolina.

101.    The exact number and identity of Class Members are within UPS's possession, custody, or control and can be determined from UPS's shipment, tracking, payment, importer-of-record, customs, refund, and fee records.

102.    Upon information and belief, the proposed Class consists of thousands of consumers nationwide, and the South Carolina Subclass consists of numerous consumers within South Carolina.

103.    Joinder of all Class Members is impracticable because of the size of the Class, the geographic dispersion of Class Members, the modest amount of each individual claim, and the fact that UPS maintains the records necessary to identify Class Members and calculate their losses.

**Commonality**

104.    There are questions of law and fact common to Plaintiff and Class Members.

105.    Common questions include, but are not limited to:

a. whether UPS collected IEEPA tariff-related charges from Plaintiff and Class Members;

b. whether UPS collected administrative, brokerage, processing, disbursement, late, or similar fees associated with IEEPA tariffs;

c. whether the IEEPA tariffs lacked legal authorization;

15

d. whether UPS served as importer of record, customs broker, filer of entry, collection intermediary, or payor-facing collection agent for Class Members' shipments;

e. whether UPS sought, received, processed, retained, or returned IEEPA tariff refunds from CBP;

f. whether UPS adopted or maintained a uniform policy of issuing tariff refunds to payors only after receiving funds from CBP;

g. whether UPS adopted or maintained a uniform policy of refusing to refund administrative fees or other associated fees charged in connection with IEEPA tariffs;

h. whether UPS's retention of tariff-related charges and associated fees is unfair, inequitable, unjust, or unlawful;

i. whether UPS was unjustly enriched by retaining money collected from Plaintiff and Class Members;

j. whether UPS holds money that, in equity and good conscience, belongs to Plaintiff and Class Members;

k. whether Plaintiff and Class Members are entitled to restitution, disgorgement, damages, declaratory relief, injunctive relief, or an accounting;

l. whether UPS's records can identify Class Members and calculate the amounts charged, refunded, and retained;

m. whether Plaintiff and similarly situated recipients, consignees, or payors knowingly assented to any UPS arbitration clause or class action waiver; and

16

n. whether payment of an import-fee demand to obtain delivery of property already in UPS's possession constitutes assent to UPS's Tariff/Terms, arbitration clause, or class action waiver.

106.    These common questions are capable of class wide resolution because they arise from UPS's uniform collection practices, uniform refund practices, uniform fee-retention policy, and centralized records.

**Typicality**

107.    Plaintiff's claims are typical of the claims of the Class and Subclass.

108.    Plaintiff, like Class Members, received an international shipment transported or delivered by UPS.

109.    Plaintiff, like Class Members, paid UPS import fees that included or were associated with IEEPA tariff-related charges.

110.    Plaintiff, like Class Members, has not received a full refund of all tariff-related charges and associated administrative, brokerage, processing, disbursement, late, or similar fees collected by UPS.

111.    Plaintiff's claims arise from the same course of conduct as the claims of Class Members: UPS's collection and retention of tariff-related charges and associated fees after the IEEPA tariffs were held unauthorized.

112.    Plaintiff's legal theories are also typical of the Class because Plaintiff seeks restitution, damages, declaratory relief, injunctive relief, and an accounting based on UPS's uniform conduct and records.

Adequacy

113.    Plaintiff will fairly and adequately protect the interests of the Class and Subclass.

17

114.    Plaintiff's interests are aligned with the interests of Class Members because Plaintiff and Class Members seek the return of tariff-related charges and associated fees collected and retained by UPS.

115.    Plaintiff has no interests antagonistic to or in conflict with the interests of Class Members.

116.    Plaintiff has retained counsel experienced in consumer class actions, complex litigation, restitutionary claims, and trial practice.

117.    Plaintiff and Plaintiff's counsel will vigorously prosecute this action on behalf of the Class and Subclass.

Predominance

118.    Common questions of law and fact predominate over any questions affecting only individual Class Members.

119.    The central issues in this case concern UPS's uniform practices and policies, including whether UPS collected IEEPA tariff-related charges, whether UPS retained associated fees, whether UPS refused to fully refund those fees, whether UPS's retention of those amounts is unlawful or inequitable, and whether UPS's records can identify the amounts owed.

120.    These questions predominate because liability turns on UPS's conduct, UPS's policies, UPS's records, UPS's public refund position, and UPS's categorical refusal to refund certain tariff-related administrative or processing fees.

121.    Individualized issues, if any, will not predominate because UPS's records can identify Class Members, determine the charges paid, determine whether UPS served as

18

importer of record, determine whether a refund was issued, and determine what amounts were retained.

122. Plaintiff's claims do not require individualized inquiry into shipping negotiations, shipper agreements, package handling, delivery performance, or transportation rates. The claims arise from UPS's collection and retention of money after the legal basis for the IEEPA tariffs failed.

123. To the extent UPS contends that any Class Member assented to arbitration, class waiver, or UPS Tariff/Terms provisions, common issues predominate as to recipients, consignees, and payors who did not create the shipment, did not tender the package to UPS, and paid import fees only to obtain delivery of property already in UPS's possession.

**Superiority**

124. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

125. The damages suffered by individual Class Members are relatively small compared to the cost and burden of individual litigation against UPS.

126. Requiring individual consumers to bring separate actions would be inefficient, impracticable, and would risk inconsistent adjudications.

127. Class treatment will conserve judicial resources, avoid duplicative litigation, and provide a practical means for consumers to recover money that would otherwise likely remain with UPS.

128. UPS's records provide an administratively feasible method to identify Class Members and calculate the amounts charged, refunded, and retained.

19

129.    This action is manageable as a class action because the claims arise from common records, common policies, common refund practices, and common legal issues.

Rule 23(b)(2)

130.    Certification is also appropriate under Rule 23(b)(2) because UPS has acted or refused to act on grounds generally applicable to the Class and Subclass.

131.    UPS's tariff-refund policy, accounting practices, and refusal to refund certain administrative or processing fees apply generally to affected consumers.

132.    Plaintiff seeks declaratory and injunctive relief requiring UPS to account for tariff-related charges, identify affected payors, return money it has no right to retain, and cease retaining associated fees charged in connection with unauthorized IEEPA tariffs.

133.    Declaratory and injunctive relief would apply to the Class and Subclass as a whole.

Rule 23(c)(4)

145.    In the alternative, or in addition, certification is appropriate under Rule 23(c)(4) for particular common issues.

146.    Common issues suitable for certification include, but are not limited to:

a. whether IEEPA authorized the challenged tariffs;

b. whether UPS collected tariff-related import charges and associated fees from consumers;

c. whether UPS's records can identify payors, shipments, fee categories, refund eligibility, refund status, and retained amounts;

d. whether UPS adopted a uniform policy concerning IEEPA tariff refunds;

e. whether UPS adopted a uniform policy refusing to refund administrative or processing fees associated with IEEPA tariffs;

f. whether UPS's retention of those fees is unjust, unfair, or inequitable;

g. whether recipients, consignees, or payors who paid import-fee demands to obtain delivery of property already in UPS's possession assented to UPS's Tariff/Terms, arbitration clause, or class action waiver; and

h. whether Plaintiff and Class Members are entitled to declaratory relief, injunctive relief, restitution, disgorgement, an accounting, or other classwide relief.

147.    Resolving these issues on a class wide basis would materially advance the litigation and promote the fair and efficient resolution of Plaintiff's and Class Members' claims.

## CAUSES OF ACTION
## COUNT I

### UNJUST ENRICHMENT

148.    Plaintiff incorporates the previous paragraphs as if fully set forth herein.

149.    Plaintiff brings this claim individually and on behalf of the Class.

150.    Plaintiff pleads this claim in the alternative to any claim or defense that depends on the existence, applicability, or enforceability of any alleged contract between Plaintiff and UPS.

151.    Plaintiff does not seek to enforce UPS's Tariff/Terms, any shipping contract, any service guide, any brokerage agreement, or any other UPS contract document through this claim.

152.    Plaintiff denies that she knowingly assented to UPS's Tariff/Terms, any arbitration provision, any class action waiver, or any contractual provision purporting to authorize UPS to retain tariff-related charges and associated fees after the IEEPA tariffs were held unauthorized.

21

153.     Plaintiff and Class Members conferred a direct financial benefit on UPS by paying UPS import fees, tariff-related charges, administrative fees, brokerage fees, disbursement fees, processing fees, late fees, and/or similar charges associated with IEEPA tariffs.

154.     UPS knowingly accepted, collected, processed, used, retained, or exercised control over those payments.

155.     UPS required or demanded payment of import fees from Plaintiff and Class Members before or in connection with delivery of international shipments.

156.     Plaintiff and Class Members paid those charges to obtain delivery of their packages, avoid delay, avoid additional fees, or prevent other adverse consequences associated with nonpayment.

157.     The payments were not voluntary gratuities or gifts to UPS. They were payments demanded by UPS in connection with international shipments and tariff-related import charges.

158.     UPS received a benefit from Plaintiff and Class Members, including the money paid, the use of that money, the retention of associated administrative or processing fees, and, upon information and belief, the right or ability to seek, receive, process, retain, or control refunds from CBP for IEEPA tariff payments funded by consumers.

159.     The IEEPA tariff-related charges and associated fees collected from Plaintiff and Class Members were tied to tariffs that the Supreme Court held were not authorized by IEEPA.

160.     UPS has publicly acknowledged a process for obtaining IEEPA tariff refunds from CBP where UPS served as importer of record and for issuing tariff refunds to payors after UPS receives refund funds.

161.     UPS's public statements confirm that the payors—not UPS—are the proper recipients of tariff refunds for shipments where UPS collected tariff-related payments from consumers and later receives corresponding refund funds from CBP.

162.     UPS has also taken the position that administrative fees charged in connection with rating and assessing IEEPA tariffs are nonrefundable.

163.     UPS's retention of those administrative, processing, brokerage, disbursement, late, or similar fees is inequitable because those fees were charged only because UPS rated, assessed, advanced, processed, collected, administered, or otherwise handled tariff charges that lacked statutory authorization.

164.     UPS should not be permitted to retain fees generated by, tied to, or assessed because of invalid IEEPA tariffs while returning, promising to return, or seeking reimbursement for only the tariff component.

165.     UPS's retention of tariff-related charges and associated fees is also inequitable because UPS possesses the records necessary to identify the payors, determine the charges collected, determine the amounts refunded or retained, and return the money to the consumers who funded the payments.

166.     Plaintiff and Class Members have been deprived of money that, in equity and good conscience, belongs to them.

167.     UPS has no lawful or equitable right to retain tariff-related charges and associated fees collected from Plaintiff and Class Members after the legal basis for those charges failed.

168.     Plaintiff and Class Members suffered economic injury, including loss of money, loss of use of money, and the continued deprivation of funds UPS has retained or controlled.

169.     It would be unjust, inequitable, and contrary to good conscience for UPS to retain the benefits conferred by Plaintiff and Class Members.

170.     Plaintiff and Class Members are entitled to restitution, disgorgement, return of all tariff-related charges and associated fees, pre-judgment interest, post-judgment interest, and all other relief necessary to prevent UPS's unjust enrichment.

171.     Plaintiff and Class Members also seek an order requiring UPS to account for all IEEPA tariff-related charges and associated fees collected, all refund requests submitted to CBP, all refunds received from CBP, all refunds issued to payors, and all tariff-related amounts and associated fees retained by UPS.

## COUNT II
**Money Had and Received**

172.     Plaintiff incorporates the previous paragraphs as if fully set forth herein.

173.     Plaintiff brings this claim individually and on behalf of the Class.

174.     Plaintiff pleads this claim in the alternative to any claim or defense that depends on the existence, applicability, or enforceability of any alleged contract between Plaintiff and UPS.

175.     Plaintiff does not seek to enforce UPS's Tariff/Terms, any shipping contract, any service guide, any brokerage agreement, or any other UPS contract document through this claim.

176.     Plaintiff denies that she knowingly assented to UPS's Tariff/Terms, any arbitration provision, any class action waiver, or any contractual provision purporting to authorize

24

UPS to retain tariff-related charges and associated fees after the IEEPA tariffs were held unauthorized.

177.    UPS received money from Plaintiff and Class Members in the form of import fees, tariff-related charges, administrative fees, brokerage fees, disbursement fees, processing fees, late fees, and/or similar charges associated with IEEPA tariffs.

178.    Plaintiff and Class Members paid those amounts to UPS before or in connection with delivery of international shipments.

179.    UPS accepted, processed, retained, controlled, or otherwise received the benefit of those payments.

180.    The money paid by Plaintiff and Class Members was tied to tariffs imposed under IEEPA and to fees UPS charged for rating, assessing, advancing, processing, collecting, administering, or otherwise handling those tariffs.

181.    The Supreme Court held that IEEPA did not authorize the challenged tariffs.

182.    As a result, the legal foundation for the IEEPA tariff-related charges collected from Plaintiff and Class Members failed.

183.    UPS has publicly acknowledged that, for shipments where UPS served as importer of record, UPS will seek IEEPA tariff refunds from CBP and issue tariff refunds to the payors after UPS receives refund funds.

184.    UPS's public refund position confirms that Plaintiff and Class Members, as payors of the tariff-related charges, are the persons entitled to receive tariff refunds for payments they funded.

185.    UPS nevertheless has retained, intends to retain, or has refused to refund administrative, processing, brokerage, disbursement, late, or similar fees charged in connection with IEEPA tariffs.

186.    UPS's retention of those associated fees is inequitable because the fees were charged only because UPS rated, assessed, advanced, processed, collected, administered, or otherwise handled tariffs that were not authorized by law.

187.    UPS also holds or controls money that was paid by Plaintiff and Class Members and that, in equity and good conscience, belongs to Plaintiff and Class Members.

188.    Plaintiff and Class Members did not intend to confer a windfall on UPS.

189.    Plaintiff and Class Members did not pay UPS so that UPS could retain tariff-related charges or associated fees after the legal basis for those tariffs failed.

190.    UPS has no equitable right to retain money collected from Plaintiff and Class Members for unauthorized IEEPA tariff-related charges or fees generated by those tariff assessments.

191.    UPS's retention of the money would be contrary to equity, justice, and good conscience.

192.    Plaintiff and Class Members have suffered economic injury, including the loss of money, the loss of use of money, and the continued deprivation of funds UPS has retained or controlled.

193.    Plaintiff and Class Members are entitled to recover all money UPS received, retained, or controlled that, in equity and good conscience, belongs to Plaintiff and Class Members.

194.     Plaintiff and Class Members seek restitution, return of all tariff-related charges and associated fees, disgorgement, pre-judgment interest, post-judgment interest, an accounting, and all other relief necessary to prevent UPS from retaining money that belongs to Plaintiff and Class Members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Monique Kelly, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in her favor and against Defendant United Parcel Service, Inc., and award the following relief:

A. An order certifying this action as a class action under Federal Rule of Civil Procedure 23;

B. An order appointing Plaintiff Monique Kelly as representative of the     Class;

C. An order appointing Plaintiff's counsel as Class Counsel;

D. An award of restitution in favor of Plaintiff and Class Members for all IEEPA tariff-related charges and associated administrative, brokerage, processing, disbursement, late, or similar fees collected and retained by UPS;

E. An award requiring UPS to return all money collected from Plaintiff and Class Members that, in equity and good conscience, belongs to Plaintiff and Class Members;

F. Disgorgement of all benefits, profits, gains, interest, or other amounts UPS obtained from the collection or retention of IEEPA tariff-related charges and associated fees;

G. Pre-judgment and post-judgment interest at the maximum rate permitted by law;

H. Reasonable attorneys' fees, litigation expenses, and costs to the extent permitted by law;

27

I. Such other legal or equitable relief as the Court deems just, proper, and necessary.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of all those similarly situated, hereby request a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: June 23, 2026                                    Respectfully Submitted,


/s/ Andre R. Belanger
Andre R. Belanger (Ga. Bar. No. 216527)
**GO BIG INJURY LAW**
1 Glenlake Parkway NE
Suite 650
Sandy Springs, Ga 30328
T: 1-800-777-7777
F: 1-843-494-5536
E: andre.belanger@poulinwilley.com

Michael R.  Reese*
Carlos F. Ramirez*
**REESE LLP**
121 King Street
Suite 8
Chappaqua, NY 10514
T: 914-860-10514
E: cramirez@reesellp.com
mreese@reesellp.com
*Pro Hac Forthcoming*

28